Aaron LINDH, Petitioner–Appellant,

v.

James P. MURPHY, Warden,
Respondent–Appellee.

No. 95–3608.

United States Court of Appeals,
Seventh Circuit.

Submitted Aug. 8, 1997.

Decided Sept. 11, 1997.

Keith A. Findley (submitted on briefs), Office of the State Public Defender, Madison, WI, James S. Liebman, New York City, for Petitioner–Appellant.

Sally L. Wellman, Office of the Attorney General, Wisconsin Department of Justice, Madison, WI, for Respondent–Appellee.

Barry Levenstam, Jerold S. Solovy, Ellen R. Kordik, Charles B. Leuin, Jenner & Block, Roberta Cooper Ramo, American Bar Association, Chicago, IL, for amicus curiae American Bar Association.

David E. Jarvis, Jeffrey O. Davis, Mitchell S. Moser, Quarles & Brady, Milwaukee, WI, George H. Kendall, New York City, for amici curiae Nicholas J. Bua, Marvin E. Frankel, Susan Getzendanner, John H. Gibbons, A. Leon Higginbotham, Shirley M. Hufstedler, George N. Leighton, Philip W. Tone, Harold R. Tyler, Jr.

Before EASTERBROOK, RIPPLE, and KANNE, Circuit Judges.

EASTERBROOK, Circuit Judge.

The Supreme Court remanded this case to us for resolution under the law that preceded the Antiterrorism and Effective Death Penalty Act of 1996. See *Lindh v. Murphy,* —— U.S. ——, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997). Our full court returned this case to the panel for disposition. Because the case has been briefed and argued twice in this court, the first time before the AEDPA's adoption, further briefs and argument are unnecessary. To abbreviate exposition, we assume that the reader is familiar with the Supreme Court's decision and our prior opinion, 96 F.3d 856 (7th Cir.1996) (en banc). One element of the en banc decision—the conclusion that Lindh is not entitled to supplement the record on a particular issue, *id.* at 867—was not disturbed by the Supreme Court and is conclusive on the panel. Other questions we must consider on our own.

At the mental-condition phase of Lindh's trial, psychiatrist Leigh Roberts testified that Lindh did not have a mental disease when he killed two people and tried to kill a third. The jury reached the same conclusion. The prosecutor elicited background information that would have led a reasonable jury to infer that Roberts was a pillar of the medical community; other evidence, which the jury did not hear, would have supported a conclusion that Roberts sexually abused some of his patients, was about to lose his medical license and his prestigious faculty positions, and stood a chance of going to prison. Lindh could have used the excluded evidence in two ways: first, to show that Roberts had a reason to be biased in the prosecutor's favor, hoping that helpful testimony would mitigate his criminal punishment even though the Dane County prosecutor (who charged Lindh) could not directly influence the Milwaukee County prosecutor (who was conducting the investigation of Roberts); second, to show that the background information used to add luster to Roberts (and hence weight to his testimony) was misleading. Lindh believes that the restrictions on his cross-examination of Roberts violated his rights under the confrontation clause of the sixth amendment, applied to the states by the fourteenth.

■ One potential response is that the confrontation right does not apply after the jury concludes that the accused performed the acts that constitute the crime. The en banc court held that Lindh's argument called for "a nontrivial extension of current law" (96 F.3d at 876) impermissible under 28 U.S.C. § 2254(d)(1), as amended by the AEDPA. Wisconsin does not contend that this is the sort of extension that under pre-AEDPA law was barred by *Teague v. Lane,* 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989). We must decide the question without regard to the requirement in the AEDPA that the petitioner establish that the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States". Proceedings to determine Lindh's mental state when he pulled the trigger were not strictly "sentencing"; Wisconsin commits this question to the same jury that hears the evidence on whether the defendant committed the acts alleged. Although that jury renders two verdicts, Wisconsin refers to the process as a "continuous trial" of two separate components of the defendant's plea:

> There shall be a separation of the issues with a sequential order of proof in a continuous trial. The plea of not guilty shall be determined first and the plea of not guilty by reason of mental disease or defect shall be determined second.

Wis. Stat. § 971.165(1)(a). Only after the jury has resolved both questions in the prosecutor's favor does the case move to a traditional sentencing proceeding before a judge. Separation of issues and evidence over time, without assigning the mental-state issues to a judge as part of a detached sentencing hearing, makes Wisconsin's hybrid procedure tough to classify. Having considered the question independently, the panel is persuaded by the reasoning of Judge Wood's separate opinion in the en banc decision, 96 F.3d at 881–83, that the mental-state element of the trial is so closely associated with the issue of guilt or innocence that Roberts was a

"witness against" Lindh, who therefore had a constitutional right to confront and cross-examine Roberts.

■ On the merits, the confrontation question is close. Applicable precedents, particularly *Delaware v. Van Arsdall,* 475 U.S. 673, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986), and *Davis v. Alaska,* 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974), say that the defendant is entitled to cross-examine a witness about potential sources of bias, but that the trial judge may place limits on the examination to prevent what the rules of evidence call "the danger of unfair prejudice, confusion of the issues, or misleading the jury". Fed.R.Evid. 403. Lindh wanted to cross-examine Roberts on a hot-button subject whose nature creates a risk that the jury would be diverted from its tasks by salacious material unrelated to the nature or extent of potential bias. Lindh's counsel did not ask the judge to permit a generic cross-examination referring to unspecified "accusations of impropriety" and "investigations"; counsel wanted to make it crystal clear that the charges had to do with *sex.* But the judge and prosecutor did not offer the option of redaction; like Lindh, they treated the subject as an all-or-none matter. With all and none the only options on the table, the trial court exceeded the discretion it possesses under the confrontation clause by giving the answer "none."

Roberts, a veteran expert witness, likely knew that the Dane County prosecutor could not reward favorable testimony in Lindh's case even indirectly, for the disqualified Dane County prosecutor could not ethically seek to influence the Milwaukee County prosecutor by making a recommendation. Lindh does not contend that any deal between Roberts and the Milwaukee County prosecutor was in prospect or under negotiation. But Roberts may have believed that testimony helping the prosecution in this case, which achieved notoriety throughout Wisconsin, would aid his cause, if only because it was bound to come to the attention of the judge who presided in the prosecution against him. What makes this case close is

that there is no evidence that Roberts changed his analysis of Lindh's mental state between the first interview (before Roberts was aware that any accusations had been made against him) and the trial. Lindh could have cross-examined Roberts about whether his view changed; if Roberts held the same position throughout, the question of bias does not arise. Or does it? Maybe on reflection Roberts *would have* come to a conclusion more favorable to Lindh, but refrained from doing so because of his desire to achieve an advantage in the prosecution pending against him. A psychiatrist would recognize the possibility that the testimony was tailored in light of subconscious desires, even if the witness attempted to be objective. Psychiatry has not been reduced to the evaluation of objective signs; Roberts could not point to the results of some test that dictated his opinion. When so much rides on imponderables, an inquiry into potential sources of bias is more important. Still, the difficulty of establishing that Roberts shaded his testimony would make this case a candidate for a conclusion that any error was harmless under *Brecht v. Abrahamson,* 507 U.S. 619, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993)—but for the rosy glow in which the prosecutor bathed Roberts.

When going through Roberts' credentials as an expert, the prosecutor led the jury to understand that it was not hearing from just any psychiatrist. Roberts was a faculty member at the University of Wisconsin and an adjunct faculty member of the San Francisco Theological Seminary. He had been the chairman of conferences about religion and mental health. Three years before trial he had been "honored ... as essentially the mid-west psychiatrist of the year". Roberts was a devoted family man whose grandchildren were approaching Lindh's age. The prosecutor offered this evidence knowing that psychiatric testimony cannot be verified or refuted empirically, making the witness' personal and professional stature important to a jury. Roberts came across as a scientist of impeccable credentials and high moral standards—an unimpeachable man. At the

time he painted this picture of Roberts, the prosecutor knew that Roberts was unimpeachable only because the trial judge would not allow impeachment. Roberts' sterling credentials were about to acquire tarnish, but the jury never learned this. Because the jury may have placed great weight on Roberts' stature—the prosecutor, who invited it to do so, is in no position to say otherwise—it is not appropriate to label the denial of cross-examination harmless error. It may have altered the outcome, for two other psychiatrists opined that Lindh had a mental disability (although one of those two believed that the disability did not prevent Lindh from understanding and controlling his acts). If the jury treated the disagreement as a battle of credentials, which it may have, Lindh's defense was undercut by restriction of cross-examination.

The judgment of the district court is reversed, and the case is remanded with instructions to issue a writ of habeas corpus requiring Wisconsin to treat Lindh as not criminally responsible for the killings, unless within 120 days it offers him a new trial on the mental-disease-or-defect question.

KANNE, Circuit Judge, dissenting.

I cannot join the majority opinion for two reasons. First, I do not agree that the Confrontation Clause applied to the second phase of Lindh's trial. On this issue, the majority adopts the analysis of Judge Wood, *see Lindh v. Murphy*, 96 F.3d 856, 879–83 (7th Cir.1996) (Wood, J., concurring in part and dissenting in part), who suggests that the second phase of Wisconsin's proceedings are more akin to an ordinary trial's determination of guilt than to a sentencing proceeding's disposition of the defendant. I, however, remain unconvinced that this second phase is so different from non-capital sentencing proceedings, where neither we nor the Supreme Court have held that the Confrontation Clause applies.

Simply put, the stakes for a defendant are quite different at phase two of Wisconsin's bifurcated proceedings than they are at phase one. We must not forget that the jury found Lindh guilty in the trial's first phase and that this verdict will remain with Lindh for the rest of his life regardless of any jury finding regarding mental disease. As the Wisconsin Supreme Court has described it, "[T]he question of guilt (i.e., was the *conduct* of the defendant criminal?) is settled in the felony prosecution that takes place in phase one." *State v. Koput*, 142 Wis.2d 370, 418 N.W.2d 804, 812 (1988). When deciding the question of mental disease, by contrast, "we are largely concerning ourselves with the difference in the institutional treatment of the defendant." *Id.* at 813 (quoting *State v. Shoffner*, 31 Wis.2d 412, 143 N.W.2d 458, 474 (1966) (Wilkie, J., concurring)). Had the jury found Lindh not guilty by reason of mental disease or defect, he still would have faced immediate confinement, possibly for life. *See* Wis. Stat. § 971.17(1). Although Judge Wood minimizes the severity of this punishment based on the possibility (and I emphasize possibility) of conditional release after six months, *see Lindh*, 96 F.3d at 882, such release is hardly the same as an acquittal. For at least six months after the termination of the initial confinement, the conditional release is revokable. *See* Wis. Stat. § 971.17(3)(e), (5). In short, the second phase was dispositional in nature, and we should be leery of letting Confrontation Clause rights creep into dispositional proceedings.

The second reason I cannot join the majority is that even if the Confrontation Clause did apply to the second phase of Lindh's trial, the trial judge did not violate the Constitution by limiting the cross-examination of Dr. Roberts. If Lindh wanted to inquire into the sexual allegations to show Roberts' bias, we have no evidence to suggest that Roberts ever changed his opinion to favor the State. The majority says Roberts' consistency is not quite good enough because an unbiased Roberts might have changed his opinion in favor of Lindh. This argument, however, is quite speculative, and it becomes even more tenuous when considered in light of the underlying conjecture that Roberts would shade his

testimony in Dane County so that the Milwaukee County prosecutor might cut him a deal. As we stated in our previous *en banc* decision in this case, "if Roberts thought that, he probably also believed that his many prior engagements as a prosecutorial expert would carry even more weight." *Lindh*, 96 F.3d at 877.

If, on the other hand, Lindh wanted to inquire into the sexual allegations to show that Roberts was not competent, such questioning was properly excluded. Roberts' alleged misconduct was entirely unrelated to his diagnosis of Lindh and did not impeach his overall professional credibility. *See State v. Lindh*, 161 Wis.2d 324, 468 N.W.2d 168, 181 (1991). Judge Wood has argued that "[i]t is fanciful to assume that a jury would give the same weight to the 'mid-west psychiatrist of the year' as it would give to someone who was facing both criminal charges and civil proceedings to revoke his license." *Lindh*, 96 F.3d at 884. But it is precisely because a jury might be swayed by this misconduct that it was proper for the trial judge to exclude the cross-examination. Although psychiatry is admittedly not a hard science, it has to be more than just personal vouching or it never should be admitted as expert testimony in the first place. The mentioning at trial that Roberts was a grandfather therefore did not open his psychiatric testimony to impeachment based on sexual misconduct and whatever other skeletons the defense could find in Roberts' closet.

The Supreme Court has told us that "trial judges retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues ... or interrogation that is repetitive or only marginally relevant." *Delaware v. Van Arsdall*, 475 U.S. 673, 679, 106 S.Ct. 1431, 1435, 89 L.Ed.2d 674 (1986). Although the AEDPA does not apply to this case and thus does not add an extra layer of deference, *see Lindh v. Murphy*, —— U.S. ——, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997), a decision to limit cross-examination is still a discretionary decision in the hands of a trial judge. *See, e.g., United States v. Dillard*, 43 F.3d 299, 305 (7th Cir.1994). The trial judge here was faced with a defendant who wanted to pursue a potentially-inflammatory line of questioning regarding sexual misconduct. Although Lindh had the chance to press Roberts regarding whether his psychiatric opinion had changed, Lindh insisted on pursuing the more lascivious inquiry into the sexual allegations. The trial judge did not abuse his discretion by halting that inquiry. Moreover, I cannot agree with the majority's suggestion that the trial judge was obligated to come up with his own compromise solution such as redaction.

Even if one believes that it is a close call regarding whether the trial judge here abused his discretion, it is nonetheless a call we have already made. In our original *en banc* decision, we stated that under the circumstances of this case,

> a reasonable and responsible judge might conclude that cross-examination based on the allegations that Roberts had sexual relations with three female patients would divert attention from the principal issue at hand—whether Lindh had a mental disease in January 1988—without producing concrete evidence of bias. When a district judge comes to such a conclusion, a federal court of appeals will exercise deferential review.... Section 2254(d)(1) [after amendment by the AEDPA] requires a federal court hearing a collateral attack to accord at least that much respect to the state courts.

*Lindh*, 96 F.3d at 877. Thus, before we applied the AEDPA's new standard of review, we stated that the decision to limit cross-examination could have been made by "a reasonable and responsible judge." That hardly sounds like an abuse of discretion to me.

Finally, I would note that the harmless-error standard for this case is not as strict as it would be for a case coming to us on direct appeal. In a habeas case involving constitutional trial error, the error must have result-

ed in actual prejudice-meaning that the error "had substantial and injurious effect or influence in determining the jury's verdict"—before a writ of habeas corpus may be granted. *Brecht v. Abrahamson,* 507 U.S. 619, 637, 113 S.Ct. 1710, 1721, 123 L.Ed.2d 353 (1993) (quoting *Kotteakos v. United States,* 328 U.S. 750, 776, 66 S.Ct. 1239, 1253, 90 L.Ed. 1557 (1946)). Confrontation Clause cases are subject to harmless error review, *see Coy v. Iowa,* 487 U.S. 1012, 1021, 108 S.Ct. 2798, 2803, 101 L.Ed.2d 857 (1988), and any error in this case was harmless under the Brecht standard. It was Lindh, after all, who had the burden of proof at the second phase of the trial. *See* Wis. Stat. § 971.15(3). The State, moreover, had a second psychiatric expert besides Roberts who testified that Lindh "did not suffer a brief reactive psychosis at the time of the crimes, did not have a mental disease, and suffered no impairment of his ability to conform his conduct to the requirements of the law." *Lindh,* 468 N.W.2d at 175. Even if one discounts all of Roberts' testimony as biased and unreliable, Lindh would have had a tough time in the face of the testimony of the State's other expert. I therefore do not understand how the majority can conclude that the limitation on Roberts' cross-examination had, in the words of Brecht, "substantial and injurious effect or influence in determining the jury's verdict." *Cf. Gomez v. Ahitow,* 29 F.3d 1128, 1137 (7th Cir.1994) (finding no actual prejudice in habeas case involving Confrontation Clause).

For the foregoing reasons, I respectfully dissent.