IN RE the COMMITMENT OF Larry J. SPROSTY:

STATE of Wisconsin, Petitioner-Respondent,

LA CROSSE COUNTY, Intervenor-Respondent,

v.

Larry J. SPROSTY, Respondent-Appellant.†

Court of Appeals

*No. 00–2404. Submitted on briefs July 9, 2001.—Decided September 27, 2001.*

2001 WI App 231

(Also reported in 636 N.W.2d 213.)

† Petition to review denied 11-27-01.

On behalf of the respondent-appellant, the cause was submitted on the brief of *Jack E. Schairer*, assistant state public defender of Madison, and *Roseann T. Oliveto*, assistant state public defender of Lancaster.

On behalf of the petitioner-respondent, the cause was submitted on the brief of *James E. Doyle*, attorney general, and *Warren D. Weinstein*, assistant attorney general.

Before Vergeront, P.J., Dykman and Roggensack, JJ.

¶ 1. DYKMAN, J. Larry Sprosty was committed to the Wisconsin Resource Center as a sexually violent person in 1995. His petition for supervised release was later granted, but the circuit court relieved the State from its order when it concluded that new evidence demonstrated that it was substantially probable Sprosty would reoffend. Sprosty appeals from the order granting the State's motion for relief and from an order denying Sprosty's motion to vacate the order for relief. Sprosty argues that no extraordinary circumstances have occurred under Wis. Stat. § 806.07(1)(h)

486

(1999–2000)[1] that would justify relieving the State from the 1996 order granting Sprosty's petition for supervised release. In addition, Sprosty contends that the circuit court erred both when it allowed one of the State's experts to testify, even though he was not a psychologist licensed in Wisconsin, and later when it denied his motion to vacate the order for relief after it was discovered that the same witness had given misleading or false testimony.

¶ 2. We conclude that the circuit court did not exercise its discretion erroneously either when it determined that there were extraordinary circumstances justifying relief under Wis. Stat. § 806.07(1)(h) or when it allowed one of the State's witnesses to give an expert opinion. Further, the circuit court did not err by denying Sprosty's motion to vacate its order. Accordingly, we affirm.

## I. Background

¶ 3. This case has taken a long and circuitous path through the Wisconsin courts. Larry Sprosty was convicted of first-degree sexual assault of a child, sexual exploitation of a child, and child enticement in 1991. The circuit court sentenced him to five years in prison. Before Sprosty was scheduled to be released, the State filed a petition under Wis. Stat. § 980.01(2) and (7) (1993–94) to commit Sprosty as a "sexually violent person." After a trial, the circuit court concluded that

---

[1] All references to the Wisconsin Statutes are to the 1999–2000 version unless otherwise noted.

Sprosty was a sexually violent person and committed him to the Wisconsin Resource Center for an indeterminate amount of time.[2]

¶ 4. On February 1, 1996, Sprosty petitioned the circuit court for an order granting him supervised release under WIS. STAT. § 980.08 (1993–94). After a hearing on September 27, 1996, the circuit court granted Sprosty's petition for supervised release and ordered the Department of Probation and Parole to prepare a treatment plan. When Crawford County failed to find a placement for Sprosty, the circuit court denied Sprosty supervised release "on the grounds that necessary accommodations for his needs for treatment, for supervision, and for the protection of the community are unavailable in Crawford County and elsewhere." Sprosty appealed the order and we reversed, concluding that, under § 980.08(5), a person must be released if the circuit court determines that release is appropriate, regardless whether the Department of Health and Family Services (DHFS) locates a placement. *State v. Sprosty*, 221 Wis. 2d 401, 403, 585 N.W.2d 637 (Ct. App. 1998). The supreme court affirmed, holding that the circuit court was required to ensure that Sprosty was placed in an appropriate program once it ordered supervised release. *State v. Sprosty*, 227 Wis. 2d 316, 320, 595 N.W.2d 692 (1999). The supreme court remanded the case to the circuit court to designate and order a county to develop a supervised release plan for Sprosty. *Id.* at 337.

¶ 5. Sprosty was never released. First, the circuit court ordered Dane County to prepare a plan for Sprosty because it concluded that Crawford County did

---

[2] Sprosty appealed this decision and we affirmed. *State v. Sprosty*, No. 95–1297 (Wis. Ct. App. Nov. 21, 1996).

not have adequate services and resources for him. However, the court later withdrew this order after it concluded that WIS. STAT. § 980.08(5) (1993–94) did not allow Sprosty to be placed in Dane County. The court then ordered La Crosse County to prepare a plan, in time for a release date of February 1, 2000. When Sprosty was not released on February 1, the court extended the time for release to March 1, 2000.

¶ 6. A hearing was held on February 23, 2000, to show cause why Sprosty had not yet been placed and to determine what efforts La Crosse County was making to meet the March 1 deadline. Although the court found the efforts of La Crosse County lacking, it extended the time for release to April 1, 2000.

¶ 7. On March 13, 2000, the State filed a motion with the circuit court to reconsider its order for supervised release, alleging that Sprosty had made sexual advances on a seventeen-year-old cellmate in the Crawford County Jail[3] during February 2000, making supervised release no longer appropriate. After the circuit court concluded that the time for filing a motion to reconsider had long since passed, the State moved the court for an order granting relief from the trial court's 1996 order granting supervised release to Sprosty under WIS. STAT. § 806.07(1)(h).

¶ 8. The circuit court held hearings on May 25, 2000, and July 13, 2000. M.L.B., who was seventeen years old at the time the incident occurred, testified that he shared a cell with Sprosty at the Crawford County Jail for approximately two weeks. M.L.B. stated that one evening Sprosty left a letter on his (Sprosty's)

---

[3] The record is not clear regarding why Sprosty was being held in the Crawford County Jail rather than the Wisconsin Resource Center.

bed. Although Sprosty never actually gave the letter to M.L.B., M.L.B. believed it was clear that Sprosty intended for him to read it. M.L.B. stated: "He [Sprosty] walked out. He looked at me. Sat it down so I'd see him sit it down. He sat it right where I could see." After Sprosty left the cell, M.L.B. picked up and read the letter when he saw his name written at the top. The letter was an offer from Sprosty to perform oral sex on M.L.B.[4] The next day, M.L.B. informed prison officials of the letter and. Sprosty was taken out of the cell. M.L.B. also testified that Sprosty never verbalized his offer and did not attempt any sexual contact with him before or after he saw the letter. Sprosty did not testify.

¶ 9. Two experts testified for the State. Raymond Wood is a clinical psychologist, licensed in Wisconsin, and the clinical director for the Sexually Violent Person Program in Illinois. Previously, Wood had contact with Sprosty as a therapist at the Wisconsin Resource Center. During the hearing, Wood testified that he believed Sprosty was still a sexually violent person and that it was substantially probable that he would reoffend if placed on supervised release. He further stated that the significance of the incident in the Crawford County Jail was "enormous" and that there were no conditions that could be placed on Sprosty that would make supervised release appropriate.

¶ 10. Anthony Thomalla, a clinical psychologist who was the Treatment Director at the Sand Ridge

---

[4] In addition to the letter, M.L.B. also testified that he believed Sprosty was watching him while he (M.L.B.) was taking a shower. Although the circuit court stated that it believed M.L.B., it never indicated whether it thought the incident was significant and instead focused on the letter. Because the circuit did not rely on that incident in making its decision, we will not consider it either.

Care Center, concurred with Wood that supervised release would be inappropriate. In 1999, he had prepared an examination report concluding that Sprosty should not be placed on supervised release. He testified that the incident at the Crawford County Jail confirmed his earlier concerns.

¶ 11. Two experts also testified for Sprosty. Janet Weber provides treatment for sexual offenders and prepared the treatment plan for Sprosty to be implemented upon his release. She has a master's degree in social work, but is not a psychologist. Weber testified that her treatment plan would not have been affected by the incident in the Crawford County Jail and she believed Sprosty handled the incident appropriately. She based her conclusion in part on a "decision matrix" that Sprosty had prepared after he wrote the letter to M.L.B. According to Weber, part of Sprosty's treatment was to create a matrix when he was at risk to reoffend in order to assess alternatives to inappropriate sexual behavior. The decision matrix listed a number of reasons Sprosty believed he should not have sexual contact with M.L.B., including "He is still a child," and "It is wrong and against everything I believe." In addition, Weber noted that Sprosty spoke to a patient care technician at the jail after he wrote the letter, never verbalized his offer to M.L.B., and had not created the situation in which he was placed. However, the trial court would not allow Weber to give her opinion regarding whether there was a substantial probability that Sprosty would reoffend.

¶ 12. Diane Lytton is a licensed psychologist with a Ph.D. in clinical psychology. She is also trained in the evaluation and treatment of sex offenders. She testified that the incident at the jail did not substantially raise Sprosty's risk to reoffend. Similar to Weber, Lytton

based her conclusion on the decision matrix, and the lack of any sexual contact with or a verbal proposition to M.L.B. Lytton also noted that Sprosty had asked to be placed in a cell by himself.

¶ 13. At the close of the hearing, the circuit court concluded that M.L.B. was telling the truth, that Sprosty had intentionally left the letter on his bed for M.L.B. to read, and that sexual contact would have occurred had M.L.B. consented. The court also found that Sprosty had requested twice to be moved out of the cell and that Sprosty was not aware that M.L.B. was seventeen years old.

¶ 14. Regarding the expert opinions, the court stated that the opinions of Wood and Thomalla "were the more appropriate, acceptable, and reasonable," and that "Dr. Lytton and Ms. Weber fail to realize the significance of the incident at the jail." Although acknowledging the advancements that Sprosty had made, the court concluded that the recent incident made supervised release inappropriate. In the court's written findings of fact and conclusions of law, the court concluded that there was a substantial risk that Sprosty would reoffend if released into the community, that the State had shown this by clear and convincing evidence, and that the "ends of justice" would be accomplished by granting the State's motion.

¶ 15. On August 11, 2000, Sprosty filed a motion requesting the court to vacate its order based on evidence that Thomalla had provided false and misleading testimony regarding his professional background and had engaged in other misconduct. Although the court agreed that inaccuracies in Thomalla's testimony impaired his credibility somewhat, the court concluded that it was not required to strike Thomalla's testimony

or vacate the order for relief. The circuit court denied Sprosty's motion and Sprosty appeals.

## II. Analysis

### A. *Extraordinary Circumstances*

¶ 16. WISCONSIN STAT. § 806.07 provides the bases for which circuit courts may relieve a party from a judgment or an order. In addition to the specific grounds provided in § 806.07(1)(a)-(g), paragraph (h) provides that a court may relieve a party from an order for "[a]ny other reasons justifying relief from the operation of the judgment." Although motions under paragraphs (a) through (c) must be brought within one year, there is no deadline for motions under paragraph (h) beyond that they be brought "within a reasonable time." Section 806.07(2).

¶ 17. To prevent parties from subverting the time requirements of WIS. STAT. § 806.07(1)(a)-(c), they must demonstrate that there are "extraordinary circumstances" justifying relief to successfully invoke § 806.07(1)(h). *Shirk v. Bowling, Inc.*, 2001 WI 36, ¶ 14, 242 Wis. 2d 153, 624 N.W.2d 375; *see also Connor v. Connor*, 2001 WI 49, ¶ 28, 243 Wis. 2d 279, 627 N.W.2d 182 (holding that the moving party "bears the burden to prove that the requisite conditions exist"). Extraordinary circumstances are those in which "the sanctity of the final judgment is outweighed by the 'incessant command of the court's conscience that justice be done in light of *all* the facts.'" *Mogged v. Mogged*, 2000 WI App 39, ¶ 13, 233 Wis. 2d 90, 607 N.W.2d 662 (quoting *State ex rel. M.L.B. v. D.G.H.*, 122 Wis. 2d 536, 550, 363 N.W.2d 419 (1985)). At the same

493

time, courts must liberally construe § 806.07 to allow relief whenever appropriate to accomplish justice. *Allstate Ins. Co. v. Konicki*, 186 Wis. 2d 140, 151–52, 519 N.W.2d 723 (Ct. App. 1994).

¶ 18. We review the circuit court's determination that extraordinary circumstances are present and its ultimate decision to grant relief from judgment for an erroneous exercise of discretion. *T.E.D. v. P.S.G.*, 170 Wis. 2d 231, 238–39, 487 N.W.2d 644 (Ct. App. 1992). Accordingly, we will reverse the circuit court only if the record demonstrates that it failed to exercise its discretion, applied an incorrect legal standard, or if the facts fail to support the trial court's decision. *In re Commitment of Williams*, 2001 WI App. 155, ¶ 9, 246 Wis. 2d 722, 631 N.W.2d 623.

¶ 19. Sprosty contends that the State has not demonstrated that extraordinary circumstances exist in this case. He refers us to the factors first annunciated in *M.L.B.*, which the supreme court stated could be used by circuit courts in determining whether relief under WIS. STAT. § 806.07(1)(h) is justified. These factors include:

> whether the judgment was the result of the conscientious, deliberate and well-informed choice of the claimant; whether the claimant received the effective assistance of counsel; whether relief is sought from a judgment in which there has been no judicial consideration of the merits and the interest of deciding the particular case on the merits outweighs the finality of judgments; whether there is a meritorious defense to the claim; and whether there are intervening circumstances making it inequitable to grant relief.

*M.L.B.*, 122 Wis. 2d at 552–53.

¶ 20. Sprosty argues that the trial court failed to consider these factors and that each of them weighs against granting relief in this case, requiring reversal. We agree with Sprosty that the record does not reflect that the circuit court considered each of these factors. We disagree, however, that it was required to do so in this case. The list of factors in *M.L.B.* is not exclusive. Rather, *M.L.B.* requires circuit courts more generally to "consider factors relevant to the competing interests of finality of judgments and relief from unjust judgments." *Id.* at 552.

¶ 21. In this case the circuit court concluded that the interest in finality was outweighed by the perceived risk that the new incident was an indicator that Sprosty would reoffend. The court stated:

> But this incident at the jail also shows that in—a sexual assault of a juvenile may occur at any time, any place. If it can occur in a jail, it can occur in a men's room, in a public place in La Crosse, or many other places. So is there a risk of re-offending? I believe that there is, and I believe that risk is substantial.
>
> . . . .
>
> My ultimate conclusion here is that it is in the interests of justice, especially for the safety of the public, safety of young—especially the safety of young persons, which requires that the State be entitled to relief from the order of supervised release.

¶ 22. We cannot conclude that the trial court improperly exercised its discretion because it considered the safety of children above all other factors. Under Wis. Stat. § 980.08(4), the circuit court must deny a petition for supervised release if the State proves, by clear and convincing evidence, that the petitioner is still a sexually violent person who is

495

substantially probable to engage in acts of sexual violence if not continued in institutional care. And, under § 980.08(6m), a court may revoke supervised release if the State shows, again by clear and convincing evidence, that any rule or condition of release has been violated or that safety of others requires that supervised release be revoked. The circuit court explicitly wrote in its findings of fact and conclusions of law that the State had met its burden under § 980.08(4) and implicitly found that the requirements for § 980.08(6m) were met when it concluded that revoking Sprosty's release was required to protect "the safety of young persons." Because it was proper for the circuit court to look to § 980.08 for guidance in this case to determine whether there were extraordinary circumstances justifying relief, the court did not misuse its discretion in failing to consider all of the factors listed in *M.L.B.*

██

¶ 23. Sprosty also contends that the evidence presented did not demonstrate a substantial probability that he would reoffend if released. Sprosty argues that because no threats or touching occurred, he was still a proper candidate for supervised release. He also emphasizes that nothing he did was against the law, since the Wisconsin Statutes do not prohibit *attempts* to have sex with seventeen year olds.[5]

---

[5] Sexual intercourse with a seventeen year old who is not your spouse is a Class A misdemeanor. *See* WIS. STAT. § 948.09. Subject to a few exceptions that do not apply here, an attempt to commit a misdemeanor is not made criminal by the Wisconsin Statutes. *See* WIS. STAT. § 939.32.

■

¶ 24. We are not persuaded, however, that a sexual assault must occur before the circuit court can conclude that it is substantially probable that a person will reoffend if not continued in institutional care. *Cf. State v. Carpenter*, 197 Wis. 2d 252, 275–76, 541 N.W.2d 105 (1995) (holding that proof of a recent overt act is not necessary to establish that someone is a sexually violent person). Additionally, whether Sprosty's behavior was criminal is not determinative. Rather, the relevant inquiry is whether the behavior indicates Sprosty is likely to reoffend. Through his letter, Sprosty offered to have sexual contact with a minor, the very behavior for which he was adjudicated to be a sexually violent person. Although we seriously question the wisdom of the decision to place a child sex offender in the same cell as a seventeen-year-old boy, whether the State was negligent or not does not change whether Sprosty is a risk to the community.

■

¶ 25. We want to encourage counties to implement programs for supervised release. Once a circuit court has determined that supervised release is appropriate, the designated county must act promptly in preparing a placement, and circuit courts should not hesitate to hold dilatory counties in contempt. But, regardless whether La Crosse County should have acted more swiftly, we cannot close our eyes to the incident that occurred in the Crawford County Jail. The circuit court concluded, and at least one expert agreed, that the incident demonstrated that there was a substantial probability that Sprosty would reoffend. Based on the evidence before the circuit court, we cannot conclude

that it improperly exercised its discretion in concluding that extraordinary circumstances existed justifying relief from the order.

## B. Requirements for Experts

¶ 26. Sprosty asserts next that under WIS. STAT. § 980.04(3) and Wis. Admin. Code §§ HFS 99.03–.04 (May 1999), each expert was required to be a psychiatrist or a psychologist licensed in Wisconsin. Because Thomalla was licensed in Illinois rather than Wisconsin, Sprosty argues that he was not qualified to give an expert opinion. Alternatively, Sprosty contends that if § 980.04(3) and §§ HFS 99.03–.04 do not apply, then the circuit court erred when it refused to allow Janet Weber, who had a master's degree in social work, to give her opinion regarding whether Sprosty was likely to reoffend.

¶ 27. We reject Sprosty's contention that Thomalla was required to be licensed in Wisconsin. Wisconsin Admin. Code §§ HFS 99.04 provides: "A person conducting an evaluation under s. 980.04(3), Stats., shall be either a psychiatrist or a licensed psychologist," and Wis. Admin. Code § HFS 99.03 defines "licensed psychologist" as one that was licensed pursuant to the Wisconsin Statutes. However, § 980.04(3) is not a rule regarding the admissibility of expert testimony. Rather, it provides the procedure the circuit court should follow if it determines that there is probable cause to believe that someone is a sexually violent person. Therefore, we agree with the State that the standard for determining the admissibility of expert testimony in this case is the general one, namely, whether it will be helpful to the trier of fact, so long as the expert is qualified by

knowledge, skill, experience, training, or education. *See* Wis. Stat. § 907.02. Further, the determination whether an expert is qualified to testify is within the circuit court's discretion. *State v. Donner*, 192 Wis. 2d 305, 311, 531 N.W.2d 369 (Ct. App. 1995).

¶ 28. It is undisputed that Thomalla has a Ph.D. in counseling psychology, is a licensed psychologist in Indiana, and has previously conducted Wis. Stat. ch. 980 examinations. Based on this information, the circuit court did not misuse its discretion when it concluded that Thomalla was qualified to testify as an expert regarding sexually violent persons.

¶ 29. We agree with Sprosty's assertion that the circuit court erred in refusing to allow Weber to give her opinion on whether Sprosty was likely to reoffend if placed on supervised release. Similar to Thomalla, Weber does not meet the requirements of Wis. Admin. Code § HFS 99.04, but she does have expertise with respect to treating sex offenders. Therefore, she was qualified to give her opinion on the ultimate issue. However, an erroneous evidentiary ruling does not require reversal unless it affects the substantial rights of the party. Wis. Stat. §§ 805.18(2) and 901.03(1). For an error to affect the substantial rights of a party, there must be a reasonable possibility that the error contributed to the outcome of the action or proceeding at issue. *Green v. Smith & Nephew AHP, Inc.*, 2001 WI 109, ¶ 96, 245 Wis. 2d 772, 629 N.W.2d 727.

¶ 30. In this case, although the circuit court stated it was prohibiting Weber from testifying on the ultimate issue, she was nevertheless allowed to give her

opinion that she believed Sprosty had acted appropriately in response to the incident and that the incident would not affect her treatment plan. In rejecting Sprosty's assertion that there was no substantial probability he would reoffend, the circuit court expressly referred to Weber's opinion, suggesting it was aware she disagreed with this conclusion. Therefore, we fail to see how the circuit court's decision would have been altered had Weber stated the precise words that she believed Sprosty was not at a substantial risk to reoffend. Furthermore, the court did allow Lytton to give her opinion on the ultimate issue. There is no indication in the circuit court's decision that it considered the *number* of expert witnesses each party had. Rather, the court expressly stated that it was the *reasoning* of Thomalla and Wood that it found persuasive. In short, because Sprosty has not demonstrated that there is a reasonable possibility that the error contributed to the circuit court's decision, we conclude the error was harmless and Sprosty is not entitled to a new trial.

### C. Testimony of Thomalla

¶ 31. Sprosty asserts that we should reverse the circuit court because it relied on the testimony of Thomalla in coming to its decision, and refused to change its mind even after learning that he had given misleading testimony regarding his professional background and engaged in other misconduct. Specifically, Sprosty argues that Thomalla: (1) lied about his credentials, which was contrary to the ethical standards of the American Psychological Association, and had been terminated from his current position because of it; (2) lied about the circumstances surrounding his termination from a former job; (3) altered two Wis. Stat. ch. 980

reexamination reports (unrelated to Sprosty) without knowledge of the original authors; and (4) made an unauthorized deposit of state money.

¶ 32. In rejecting Sprosty's argument that it should strike Thomalla's testimony, the circuit court concluded that the allegation regarding the deposit was irrelevant to Thomalla's testimony and that his altering of reports was "misconduct," but did not "ris[e] to the level of striking his testimony." With regard to the false and/or misleading aspects of his testimony, the court concluded that they did not undermine Thomalla's basic qualifications to give an expert opinion. Moreover, Thomalla's opinion was corroborated by Wood.

■

¶ 33. We cannot conclude that the circuit court's refusal to strike Thomalla's testimony was improper. While Thomalla's past misconduct and misleading testimony may have impaired his credibility, it does not make his testimony incredible as a matter of law. *See In re Spengler*, 228 Wis. 2d 250, 258, 596 N.W.2d 818 (Ct. App. 1999) (holding that court of appeals may not reverse circuit court's determinations regarding credibility unless the witness is credible or incredible as a matter of law). First, we agree with the circuit court that although Thomalla may have given inaccurate testimony regarding his job titles and the length of time he held a particular job, there is no dispute that he is a licensed psychologist or that he has experience evaluating sexually violent persons. Second, we are not convinced that Thomalla's dishonesty regarding his curriculum vitae suggests his opinion regarding the likelihood that Sprosty will reoffend is similarly unreliable.

¶ 34. Similar to the above argument, Sprosty argues that Thomalla's testimony constitutes a fraud on the court, requiring a new trial. Under Wis. Stat. § 806.07(1)(c), a court may relieve a party from an order if it was obtained by fraud. In this case, however, there is no indication that the order was obtained by fraud. First, there is no evidence that the State was aware that Thomalla's testimony was inaccurate.[6] Second, it was not the specific titles that Thomalla claimed he held that the circuit court relied upon, but rather his expertise regarding sex offenders. And, as noted above, we do not believe that Thomalla's expert opinion is no longer worthy of belief because of inaccuracies in his testimony regarding his work history. Third, the circuit court expressly noted that its decision was not based on Thomalla's opinion alone, but also on Wood's, strongly suggesting that, even without Thomalla's testimony, the court would have made the same decision.[7] Therefore, the circuit court did not err when it declined to order a new trial.

---

[6] Sprosty also contends that the doctrine of "unclean hands" should bar the State from obtaining relief from the judgment. *See Timm v. Portage County Draining Dist,* 145 Wis. 2d 743, 753, 429 N.W.2d 512 (Ct. App. 1988) (holding that party may be denied equitable relief if it has been guilty of substantial misconduct "in regard to, or at all events connected with, the matter in litigation"). We also reject this argument because Sprosty fails to point to any evidence in the record that would indicate the State knew that Thomalla was providing inaccurate testimony.

[7] We note also that even where a fraud on the court has occurred, the circuit court is not required to vacate the judgment. *Johnson v. Johnson,* 157 Wis. 2d 490, 497–98, 460 N.W.2d 166 (Ct. App. 1990).

## D. Fair Hearing

¶ 35. Finally, Sprosty makes a number of allegations throughout his brief[8] that he was denied a fair hearing, although he never asserts that his right to due process was violated. Specifically, Sprosty claims he was denied a fair hearing because: (1) the State relied on Thomalla's incredible testimony; and (2) he was unable to cross-examine Thomalla regarding potential bias he held in favor of the State or with regard to his inaccurate curriculum vitae and prior misconduct.

¶ 36. With respect to the first claim, we have already noted that there is no evidence that the State was aware that Thomalla's testimony was misleading or false. Sprosty, however, argues that under *Giglio v. U.S.*, 405 U.S. 150 (1972), and *State v. Nerison*, 136 Wis. 2d 37, 401 N.W.2d 1 (1987), the State was required to withdraw its use of Thomalla's testimony after it learned that it was false. Although it is true that *Giglio* and *Nerison* held that prosecutors may not rely on testimony that they later learn to be false, this is only if " 'the false testimony could . . . in any reasonable likelihood have affected the judgment of the jury.' " *Giglio*, 405 U.S. at 154 (quoting *Napue v. Illinois*, 360 U.S. 264, 271 (1959)). Here, the judge stated expressly at the August 23 hearing that he believed Thomalla's expert opinion testimony was still credible. Since we cannot conclude that Thomalla's testimony is incredible as a matter of law, we agree with the State that it was not required to withdraw all reliance on Thomalla's opinion.

---

[8] Sprosty did not file a reply brief.

¶ 37. For Sprosty's second claim, that he was unable to fully cross-examine Thomalla, he relies on *Lindh v. Murphy*, 124 F.3d 899 (7th Cir. 1997). *Lindh* held that a defendant's right under the Confrontation Clause of the federal constitution was violated when he was prohibited from attempting to show the State's expert witness was biased because of a pending prosecution. *Id.* at 901–02. We first note that there is no indication in the record that Sprosty made this argument to the circuit court and it is therefore waived. *Wirth v. Ehly*, 93 Wis. 2d 433, 443–44, 287 N.W.2d 140 (1980). Furthermore, we do not believe that *Lindh* is applicable. There was no pending prosecution against Thomalla and no evidence that Thomalla believed he could save his job with DHFS by giving testimony favorable to the State. Sprosty's claim is speculation. We again note that the circuit court also relied on Wood's opinion, which corroborated Thomalla. We also fail to see how Sprosty was prejudiced by being unable to cross-examine Thomalla regarding the inaccuracies in his curriculum vitae or other past misconduct. The circuit court accepted as true all of the factual allegations regarding Thomalla made by Sprosty but concluded that his opinion was still credible. Sprosty has not indicated what else further cross-examination would have produced. Therefore, Sprosty's argument that he was denied a fair hearing fails.

*By the Court.*—Orders affirmed.