Kenneth A. FOLKMAN, Sr., Debra J. Folkman and Kenneth A. Folkman, Jr., Plaintiffs-Appellants,

v.

Sheri A. QUAMME, State Farm Mutual Automobile Insurance Company and Keith A. Folkman, Defendants,

SOCIETY INSURANCE, Defendant-Respondent.†

Court of Appeals

*No. 02–0261. Submitted on briefs June 12, 2002.—Decided August 29, 2002.*

2002 WI App 237

(Also reported in 652 N.W.2d 406.)

† Petition to review granted 11-12-02.

On behalf of the plaintiffs-appellants, the cause was submitted on the briefs of *George Burnett* of *Liebmann, Conway, Olejniczak & Jerry, S.C.*, Green Bay.

On behalf of the defendant-respondent, the cause was submitted on the brief of *James W. Mohr, Jr.* of *Mohr & Anderson, S.C.*, Hartford.

Before Vergeront, P.J., Dykman and Lundsten, JJ.

¶ 1. VERGERONT, P.J. This appeal concerns the construction of insurance policy provisions relating to the insurer's limit of liability when there is more than one insured liable in an automobile accident. The circuit court construed Society Insurance's policy to limit its liability to $50,000 per accident regardless of the number of insureds who are liable in the accident. We agree with the insureds that the policy is ambiguous and is reasonably interpreted to provide that the per person and per accident limits for bodily injury apply to each insured liable in one accident. We therefore conclude that this is the proper construction of the policy. Accordingly, we reverse the circuit court's order denying the insureds' request for a declaratory ruling in their favor and its order dismissing Society from this action upon deposit of $50,000 to the clerk of court. We remand for further proceedings consistent with this opinion.

## BACKGROUND

¶ 2. Keith Folkman was seventeen years old at the time of the accident and was operating a car owned by his parents, Debra and Kenneth Folkman, Sr., when it collided with another vehicle. Debra and another son, Kenneth Jr., were passengers in the car Keith was

driving, and both Debra and Kenneth Jr. were seriously injured. Both Keith's parents had sponsored Keith's driver license.[1]

¶ 3. Keith's parents' car was insured under a Society policy issued to Debra, as the named insured. The declaration page provided that there was a "split limit" of liability for bodily injury—$25,000 for each person and $50,000 for each occurrence. Keith and Kenneth Sr., as well as Debra, were each insureds under the policy.[2]

¶ 4. The "Insuring Agreement" section of "Part A—Liability Coverage" provided:

INSURING AGREEMENT

A. We will pay damages for "bodily injury" or "property damage" for which any "insured" becomes legally responsible because of an auto accident. Damages include prejudgment interest awarded against the "insured." We will settle or defend, as we consider appropriate, any claim or suit asking for these damages. In addition to our limit of liability, we will pay all defense costs we incur. Our duty to settle or defend ends when our limit of liability for this coverage has been exhausted. We have no duty to defend any suit or settle any claim for "bodily injury" or "property damage" not covered under this policy.

¶ 5. The endorsement titled "Split Liability Limits" replaced the first paragraph of the "Limit of Liabil-

---

[1] Under Wis. Stat. § 343.15(1), when a person under eighteen applies for a license, the application must be signed and verified by an adult sponsor. Under § 343.15(2)(b), any negligence of a person under eighteen in operating a motor vehicle is imputed to the person's parents, where both have custody and either signed as a sponsor.

[2] Keith was listed on the declaration page as a driver, along with Kenneth Sr., Debra, and another family member.

ity" provision in Part A and provided as follows. (The layout here is substantially the same to that of the endorsement itself.)

## SPLIT LIBILITY LIMITS

## SCHEDULE

Bodily Injury Liability

Property Damage Liability

The first paragraph of the Limit of Liability provision in Part A is replaced by the following:

LIMIT OF LIABILITY

The limit of liability shown in the Schedule or in the Declarations for each person for Bodily Injury Liability is our maximum limit of liability for all damages, including damages for care, loss of services or death, arising out of "bodily injury" sustained by any one person in any one auto accident. Subject to this limit for each person, the limit of liability shown in the Schedule or in the Declarations for each accident for Bodily Injury Liability is our maximum limit of liability for all

damages for "bodily injury" resulting from any one auto accident.

$_____ each person
$_____ each accident
$_____ each accident

The limit of liability shown in the Schedule or in the Declarations for each accident for Property Damage Liability is our maximum limit of liability for all "property damage" resulting from any one auto accident. This is the most we will pay regardless of the number of:

1. "Insureds;"

2. Claims made;

3. Vehicles or premiums shown in the Declarations; or

4. Vehicles involved in the auto accident.

This endorsement must be attached to the Change Endorsement when issued after the policy is written.

868

¶ 6. The Folkmans[3] initiated this action against Keith, Society, the driver of the other vehicle, and that driver's insurer. Society acknowledged Keith's responsibility for the accident, but disagreed with the Folkmans over the limit of the liability coverage. Society contended that its liability limit was $50,000 for the accident, and it filed a motion seeking to deposit this amount with the court and to be dismissed from the action. The Folkmans opposed the motion. They contended that, since Debra was liable to Kenneth Jr. as Keith's sponsor and Kenneth Sr. was liable to Debra and Kenneth Jr. as Keith's sponsor, and since Debra, Kenneth Sr., and Keith were each separately insured under the policy, Society owed $125,000: $50,000 for Keith's liability to Debra, $25,000 for Debra's sponsor liability to Kenneth Jr., and $50,000 for Kenneth Sr.'s sponsor liability. The Folkmans sought a declaratory ruling that this was the correct amount of Society's obligation for liability coverage.

¶ 7. The circuit court concluded that, although the policy provisions quoted above "may appear ambiguous . . ., the policy is unambiguous when applying the existing case law," and it decided the policy limit for bodily injury liability was $50,000. The court therefore denied the Folkmans' motion for a declaratory ruling in their favor and ordered that Society be dismissed upon deposit of $50,000 with the court.

## DISCUSSION

¶ 8. On appeal, the Folkmans contend the court erred in construing the policy to limit Society's liability to $50,000. As they did in the circuit court, they assert

---

[3] Kenneth Sr., Debra, and their son, Kenneth Jr., are the plaintiffs. We will refer to them as "the Folkmans" unless it is necessary to identify them as individuals.

that the proper construction takes into account that there is more than one insured liable in this accident and results in coverage of $125,000.[4]

██

¶ 9. The proper construction of an insurance policy is a question of law, which we review de novo. *Danbeck v. American Family Mut. Ins. Co.*, 2001 WI 91, ¶ 10, 245 Wis. 2d 186, 629 N.W.2d 150. An insurance policy is construed to give effect to the intent of the parties as expressed in the language of the policy itself. *Id.* If the language of the policy is unambiguous, we enforce it as written, without resort to rules of construction or principles of case law. *Id.* Policy language is ambiguous if it is susceptible to more than one reasonable interpretation. *Id.* If the language is ambiguous, we construe it in favor of the insured. *Id.* When examining language in an insurance policy, we do not view it in isolation, but in the context of the policy as a whole. *Badger Mut. Ins. Co. v. Schmitz*, 2002 WI 98, ¶ 61, 255 Wis. 2d 61, 647 N.W.2d 223.

██

¶ 10. As noted above, the declaration page under "Limits of Liability" provides split limits for liability for bodily injury, meaning one limit for each person— $25,000—and another limit for each occurrence— $50,000. However, this page does not indicate how these limits are to apply when there is more than one insured liable for bodily injury in one accident. We therefore turn to "Part A Liability Coverage," which begins with the broad language in Paragraph A of "Insuring Agree-

---

[4] The Folkmans made a number of other arguments in the circuit court based on various statutes and on sponsorship status, which the circuit court also rejected. The Folkmans renew these on appeal, but we need not address them.

ment" that the insurer will pay damages for bodily injury "for which any insured becomes legally responsible because of an auto accident."[5] There is no dispute between the parties that Debra and Kenneth Sr., as Keith's sponsors, have liability, along with Keith, for his negligence in this accident. The broad opening sentence is limited later in the paragraph by reference to the language, "In addition to our limit of liability." It is plain from a reading of this entire section, in conjunction with the declaration page, that Society is not agreeing to pay for all damages for which "any 'insured' becomes legally responsible," but only for those damages within the "limit of liability." However, it is still not clear how the "limit of liability" on the declaration page is to apply when more than one insured is liable for bodily injury caused by an accident.

¶ 11. We next turn to the "Split Liability Limits" endorsement, which replaces the first paragraph of the "Limit of Liability" section in Part A. The first paragraph of the endorsement addresses damages for bodily injury, and the second addresses property damage; in both the reader is referred to the declaration page for the liability limits, since no figure is written in the schedules in the endorsement. With respect to bodily injury, the first sentence of the first paragraph explains that the per person limit on the declaration page is the "maximum limit for all damages . . . sustained by any one person in any one auto accident," and elaborates on this by itemizing the types of damages included in this limit. The second sentence explains that the per accident (or, on the declaration page, per "occurrence") limit

---

[5] The definition of insured is contained in Section B of "Insuring Agreement." The parties agree that Kenneth Sr., Debra, and Keith are each "insureds" within the meaning of the policy definition.

871

is the "maximum limit of liability for all damages . . . resulting from any one auto accident." The two sentences read together explain the relationship between the split liability limits: the lower of the two controls. If the per person limits exceed $50,000 when they applied to the number of persons injured in one accident, then the per accident limit controls; on the other hand, even if one person's damages for bodily injury exceeds $25,000, if the total damages for personal injury are less than $50,000, the per person limit controls.

¶ 12. Society argues that this first paragraph in the endorsement does more than explain the relationship of the split liability limits to one another. According to Society, this paragraph unambiguously tells the insured that regardless of the number of insureds who are liable in each accident, the maximum the insurer will pay for all insureds combined is $25,000 for each person injured and $50,000 for the entire accident. We conclude that it is reasonable to read the phrase "maximum limit of liability" to mean the maximum limit of liability for all insureds, rather than for each insured. However, we do not agree with Society that this is the only reasonable interpretation for the following reasons.

¶ 13. The endorsement is entitled "Split Liability Limits," and the first paragraph is most obviously aimed at explaining how the two levels of bodily injury liability limits interact with each other. Nothing in this paragraph draws the insured's attention to the effect of the number of insureds on these limits. However, in the property damages paragraph, which is placed on the endorsement right next to the bodily injury paragraph, after the sentence explaining that the limit of liability on the declaration page for property damage is the

"maximum limit of liability for all 'property damage' for any one accident," this sentence follows:

> This is the most we will pay regardless of the number of:
>
> 1. "Insureds;"
>
> 2. Claims made;
>
> 3. Vehicles or premiums shown in the Declarations; or
>
> 4. Vehicles involved in the auto accident.

Given the placement of this sentence on the page and the use of "This" beginning the sentence—suggesting reference to the one liability limit for property damage referred to in the preceding sentence—it does not appear that this "regardless of the number of insureds" sentence applies to the bodily injury liability limits in the preceding paragraph. Indeed, Society does not argue that it does. Therefore, it is reasonable to read the per person and per accident limits for bodily injury as applying to each insured liable in an accident in contrast to the property damage limit. We also observe that if Society is correct that the use of "maximum limit of liability" plainly tells an insured that the limit applies regardless of the number of insureds liable in one accident, then the sentence expressly so stating regarding the property damage limit would not be necessary. Its use reasonably suggests that the sentence is needed to make clear that the property damage limit referred to applies regardless of the number of insureds; and its omission from the paragraph on bodily injury, at a minimum, makes it unclear whether those limits apply regardless of the number of insureds liable in one accident.

¶ 14. Society argues that this court in *Danielson v. Gaspar*, 2001 WI App 12, 240 Wis. 2d 633, 623 N.W.2d 182, construed a "per occurrence" or "per accident" limit to apply regardless of the number of insureds, and the circuit court relied on that case in construing the policy in Society's favor. We do not agree that *Danielson* supports Society's position.

¶ 15. In *Danielson*, the injured person argued that the insured's negligent entrustment of a vehicle to the driver constituted a separate occurrence from the accident itself, thus providing $100,000 for each occurrence. That policy provided that the bodily injury liability limit for each person—$100,000—was the maximum for bodily injury sustained by one person in any occurrence. *Id.* at ¶ 13. We concluded that the policy definition of "accident" or "occurrence" was plain, and under that definition both those terms meant the same thing: "a sudden event resulting in bodily injury." *Id.* We therefore concluded that there was only one occurrence—the collision of the vehicles—and the acts and omissions prior to that collision did not affect the maximum amount payable. *Id.* We also stated that "the number of insureds whose negligence cause the accident does not determine the amount payable under the policy," *id.* at ¶ 14, and this is the language Society relies on. However, Society omits the preceding sentence and the accompanying footnote, which make clear that the reason we made the quoted statement was that the policy in that case expressly provided that the per person and per accident limits were the maximum the insurer would pay "regardless of the number of 'insured persons' or claims made." *Id.* at n.8.

¶ 16. Thus, Society's citation to and discussion of *Danielson* is inaccurate in two respects: First, the policy language we construed in *Danielson* was the

definition of "accident or occurrence," not the "limit of liability" clause. Second, the limit of liability clause there contained the express language—"regardless of the number of insureds"—that is lacking in the paragraph on bodily injury limits in the endorsement here.

¶ 17. We conclude that, when read together, Paragraph A of "Insuring Agreement" and the "Split Liability Limits" endorsement are ambiguous. They can be reasonably read to provide that the per person and per accident limits for bodily injury on the declaration page apply to each insured liable in one accident, as the Folkmans contend; or they can be reasonably read to apply regardless of the number of insureds, as Society contends. Since the former construction is more favorable to the insured, that is the one we adopt. *See Danbeck*, 2001 WI 91 at ¶ 10. Accordingly, we reverse the circuit court's order denying the Folkmans' motion for a declaratory ruling in their favor, and its order dismissing Society upon deposit of $50,000 with the clerk of court, and we remand for further proceedings consistent with this opinion.

*By the Court.*—Order reversed and cause remanded.