Dawn SUKALA and John Sukala, Plaintiffs-Appellants,

v.

HERITAGE MUTUAL INSURANCE COMPANY and Western National Mutual Insurance Company, Defendants-Respondents.†

Court of Appeals

*No. 03–0173. Oral argument January 9, 2004.—Decided June 17, 2004.*

2004 WI App 128

(Also reported in 685 N.W.2d 809.)

† Petitions to review granted 9-1-04.

On behalf of the plaintiffs-appellants, the cause was submitted on the briefs of *D. James Weis* of *Habush*

*Habush & Rottier, S.C.*, Rhinelander, and *Virginia M. Antoine* of *Habush Habush & Rottier, S.C.*, Milwaukee. There was oral argument by *D. James Weis*.

On behalf of the defendant-respondent, Heritage Mutual Insurance Company, the cause was submitted on the brief of *Mark A. Klinner* and *Michael J. Roman* of *Zalewski, Klinner & Kramer, LLP*, Wausau. There was oral argument by *Michael J. Roman*.

On behalf of the defendant-respondent, Western National Mutual Insurance Company, the cause was submitted on the brief of *Nadine I. Davy* of *Anderson, O'Brien, Bertz, Skrenes & Golla*, Stevens Point. There was oral argument by *Nadine I. Davy*.

Before Deininger, P.J., Dykman and Higginbotham, JJ.

¶ 1. DYKMAN, J.   Dawn and John Sukala (the Sukalas) appeal from an order denying them relief under Wis. Stat. § 806.07(1)(h) (2001–02).[1] They assert that the trial court erroneously exercised its discretion when it found that a change in case law did not justify opening the judgment. We agree and reverse.

## FACTS

¶ 2.   Because our review is limited to the trial court's denial of relief under Wis. Stat. § 806.07(1)(h), we need not consider the merits of the underlying insurance claims in this case. We set forth only those facts relevant to the § 806.07(1)(h) motion, which focuses primarily on the procedural history of this case and supreme court decisions rendered after the trial

---

[1] All references to the Wisconsin Statutes are to the 2001–02 version unless otherwise noted.

court entered judgment. For an explanation of the facts of the underlying insurance claims *see Sukala v. Heritage Mutual Insurance Co.,* 2000 WI App 266, 240 Wis. 2d 65, 622 N.W.2d 457 (*Sukala I*).

¶ 3. The Sukalas sued respondents to recover under automobile insurance policies with underinsured motorist (UIM) coverage. The UIM coverage contained reducing clauses. On April 14, 1999, the trial court entered an order and judgment in favor of the insurers. The Sukalas appealed, raising two issues: (1) whether Heritage Mutual Insurance Company (Heritage) complied with the notification requirements in WIS. STAT. § 631.36(5); and (2) whether the statute permitting reducing clauses, WIS. STAT. § 632.32(5)(i), was constitutional. After the parties filed their briefs, the supreme court decided *Dowhower v. West Bend Mutual Insurance Co.,* 2000 WI 73, 236 Wis. 2d 113, 613 N.W.2d 557. There, the supreme court held that § 632.32(5)(i) was constitutional and that:

> an insurer may reduce payments made pursuant to a UIM policy by amounts received from other legally responsible persons or organizations, provided that the policy clearly sets forth that the insured is purchasing a fixed level of UIM recovery that will be arrived at by combining payments made from all sources.

*Id.,* ¶ 33. We allowed the parties in *Sukala I* to address the issue of policy ambiguity at oral argument. We concluded that *Dowhower* disposed of the Sukalas' constitutionality claims. We held that the policy was unambiguous. Accordingly, we affirmed the trial court's decision. The supreme court denied the Sukalas' petition for review on April 5, 2001.

¶ 4. While we were considering *Sukala I, Badger Mutual Insurance Co. v. Schmitz* was also being liti-

gated. *Badger Mut. Ins. Co. v. Schmitz*, 2002 WI 98, 255 Wis. 2d 61, 647 N.W.2d 223. *Schmitz* raised the issue of whether a UIM reducing clause was unenforceable because it rendered UIM coverage ambiguous or illusory. The trial court held that the reducing clauses were unenforceable because the policy language did not clearly set forth the insurer's right to reduce liability. On appeal, we relied on our decision in *Sukala I* and held that the policy was enforceable because the reducing clause was unambiguous. Accordingly, we reversed the trial court's order.

¶ 5. The supreme court granted a petition for review in *Schmitz* on October 23, 2001. It reversed on July 10, 2002, concluding that a reviewing court must examine "an unambiguous reducing clause in the context of the entire policy to determine whether the coverage provided is understandable and clear. If the coverage provided is misleading and unclear, the policy is ambiguous, or worse, and the clause reducing UIM coverage is not enforceable." *Schmitz*, 255 Wis. 2d 61, ¶ 49. In reaching this conclusion, the supreme court addressed *Sukala I*, where we concluded:

> [T]hat under *Dowhower* and the declared public policy of the legislature in WIS. STAT. § 632.32(5)(i), UIM reducing clauses complying with § 632.32(5)(i) cannot render UIM coverage "illusory." Once we have concluded that the UIM provisions of a policy are unambiguous, as we have here, then our inquiry is at an end.

*Sukala I*, 240 Wis. 2d 65, ¶ 20. The supreme court considered this reasoning ambiguous because

> the *Sukala* court shifted terms, moving from the reducing clause to "the UIM provisions" of the policy, although the two could easily be read as one and the same. A policy in which all "the UIM provisions" are

unambiguous is different from a policy in which only the reducing clause is unambiguous. In any event, the concluding sentence implies that once the reducing clause is found to be unambiguous, the inquiry is at an end. That is incorrect because *Dowhower contemplates consideration of the entire policy.*

*Schmitz,* 255 Wis. 2d 61, ¶ 42 (citations omitted).

¶ 6.  In this case, *Sukala II,* the trial court held a hearing concerning the developments in case law since it entered a judgment validating the reducing clauses in the Sukalas' policies. In its oral decision, the court compared the facts here to those in *Mullen v. Coolong,* 153 Wis. 2d 401, 406, 451 N.W.2d 412 (1990) (*Mullen II*) and reasoned that the inequity in *Mullen II* derived from contrary constructions of the same policy. It also recognized that the Sukalas had signed a release for Western National Mutual Insurance Company (Western) and a stipulated dismissal for Heritage. It noted that seven months passed between the time the supreme court denied review in *Sukala I* and granted review in *Schmitz.* Finally, the trial court reasoned that the supreme court would have explicitly overruled *Sukala I* if its result was incorrect. The court explained,

[I]t becomes very difficult for me to say that the judgment ought to be reopened and find some extraordinary circumstance, other than the fact that there's a new precedent in the Court of Appeals. And I think that for me to reopen simply on the ground that there's a new precedent ... or new language interpreting the precedent is inappropriate.

The trial court concluded that no extraordinary circumstances justified relief and denied the Sukalas' Wis. Stat. § 806.07(1)(h) motion. The Sukalas appeal.

## STANDARD OF REVIEW

¶ 7. Whether to grant relief from a judgment under Wis. Stat. § 806.07(1)(h) lies within the discretion of the trial court. *Mullen*, 153 Wis. 2d at 406. We will reverse only if the trial court erroneously exercised its discretion. *Id.* "The term 'discretion' contemplates a process of reasoning which depends on facts that are in the record or reasonably derived by inference from the record and yields a conclusion based on logic and founded on proper legal standards." *Id.* A trial court erroneously exercises its discretion when it bases a decision on an error of law. *State v. Brunton*, 203 Wis. 2d 195, 202, 552 N.W.2d 452 (Ct. App. 1996).

## DISCUSSION

¶ 8. Wisconsin Stat. § 806.07 authorizes the court to relieve a party from a judgment, order, or stipulation in certain circumstances. Paragraph 806.07(1)(h) is a catch-all provision that permits relief for any "reasons justifying relief from the operation of the judgment." It "gives the trial court broad discretionary authority and invokes the pure equity power of the court." *Mullen II*, 153 Wis. 2d at 407. Courts construe this statute "to achieve a balance between the competing values of finality and fairness in the resolution of disputes." *Id.*

¶ 9. "There is no simple rule to guide the court in deciding whether or not to sunburst or how to sunburst a decision."[2] *Harmann v. Hadley*, 128 Wis. 2d 371, 379,

---

[2] "Sunbursting" is the "technique known as prospective overruling . . . to soften or limit the impact of a newly an-

382 N.W.2d 673 (1986). To start, we turn to *Mullen II* for some guidance on when relief under WIS. STAT. § 806.07(1)(h) is appropriate. In *Mullen II*, the supreme court denied Mullen's petition for review and then "accepted certification of [*Nicholson v. Home Ins. Co.*] which posed the identical question of law raised by Mullen in her petition for review." *Mullin II* at 404. In *Nicholson*, the court specifically overruled *Mullen I*. *Id.* Mullen, apparently unaware that *Nicholson* was pending, settled her claim and stipulated to dismissing the action. *Id.* After *Nicholson* was released, Mullen moved for relief from the stipulated dismissal order and reentry of judgment pursuant to § 806.07. *Id.* The supreme court affirmed the trial court's decision to grant relief because Mullen was "a victim of circumstance." *Id.* at 408. It reasoned that it "reached the precise result [in *Nicholson* that] Mullen advocated in her petition for review in *Mullen I*." *Id.* It concluded that "[u]nder these unique facts, the result reached by the trial court [was] not an abuse of discretion." *Id.*

¶ 10.   Since then, the court has clarified its ruling in *Mullen II*:

> [T]his court **did not** promulgate a two-part test under which a plaintiff must show that this court denied review of an issue at the same time an identical issue was before this court in another case. *Mullen II* merely set forth one example of an appropriate exercise of discretion and did not, in any way, limit the circuit court's authority to grant relief pursuant to sec. 806.07, Stats.

nounced rule. *State v. Picotte*, 2003 WI 42, 43, 261 Wis. 2d 249, 661 N.W.2d 381. The term derives from *Great Northern Railway Co. v. Sunburst Oil & Refining Co.*, 287 U.S. 358 (1932), where the court limited its decision to future conduct.

*Schwochert v. American Family Mut. Ins. Co.*, 172 Wis. 2d 628, 634, 494 N.W.2d 201 (1993) (citations omitted).

¶ 11. The respondents correctly assert that the facts of this case are not the same as those in *Mullen II*. They distinguish *Mullen II* because the petitions for review in *Mullen I* and *Nicholson* were contemporaneously pending before the supreme court and posed identical issues. They note that seven months passed between the supreme court's denial of the Sukalas' petition for review and the time it granted review in *Schmitz*. They argue that *Schmitz* did not present the same arguments as *Sukala I*. They also contend that the Sukalas knew that *Schmitz* was pending before the supreme court when they executed their releases. The respondents urge us to consider the fact of this case to be more analogous to *Schwochert v. American Family Mutual Insurance Co.*, 166 Wis. 2d 97, 479 N.W.2d 190 (Ct. App. 1991), *aff'd,* 172 Wis. 2d 628, 494 N.W.2d 201 (1993), and *Brown v. Mosser Lee Co.*, 164 Wis. 2d 612, 476 N.W.2d 294 (Ct. App. 1991), where we denied relief under Wis. Stat. § 806.07(1)(h).

¶ 12. While the facts here are not exactly the same as those in *Mullen II*, the supreme court has clarified that such similitude is not necessary for relief to be warranted under Wis. Stat. § 806.07(1)(h). *Schwochert*, 172 Wis. 2d at 634. Like Mullen, the Sukalas were victims of circumstance. The inequity that occurred in *Mullen II* occurred here: The supreme court granted review in *Schmitz* seven months after denying review of the same issue in *Sukala I*. Such a time frame is close enough to the scenario in *Mullen II*. Moreover, the supreme court overruled *Sukala I* in *Schmitz*, albeit implicitly. *See Dowhower v. Marquez*, 2004 WI App 3, ¶ 20, 268 Wis. 2d 823, 674 N.W2d 906

(*Sukala I* overruled by *Schmitz*). Regardless, relief under § 806.07(1)(h) is not contingent on the supreme court overruling the case in which movant's judgment was rendered. The crux of our inquiry is whether fairness mandates opening the judgment, despite the compelling justifications for protecting the finality of the judgment. Those facts are present here, and bring the Sukalas within the *Mullen II* exception to the finality of judgments. Accordingly, we conclude that the trial court erroneously exercised its discretion by denying the Sukalas' motion.

¶ 13. Finally, Western contends that WIS. STAT. § 806.07(1)(h) does not authorize opening the release the Sukalas executed regarding their claims against them. It asserts that § 806.07(1) permits a court to relieve a party from a "judgment, order or stipulation," but not from a release of claims. It argues that a release is an enforceable contract between the parties, citing *Continental Casualty Co. v. Wisconsin Patients Compensation Fund*, 164 Wis. 2d 110, 117, 473 N.W.2d 584 (Ct. App. 1991). It also argues that the Sukalas must return the consideration, $75,999.82, that Western paid to them before the agreement would be voided. The Sukalas assert that Western waived this issue by not raising it in the trial court.

¶ 14. After reviewing the transcript of the trial court hearing, we conclude that Western has not waived its argument that WIS. STAT. § 806.07(1)(h) does not provide for relief from a release. However, we are not persuaded by this argument. We treat releases and stipulations as contracts and construe them to give effect to the parties' intentions. *Compare Gielow v. Napiorkowski*, 2003 WI App 249, 268 Wis. 2d 673, 673 N.W.2d 351, *review denied*, 2004 WI 20, 269 Wis. 2d 200,

675 N.W.2d 806 (Wis. Feb. 24, 2004) (No. 03–0050) *with State v. Peppertree Resort Villas, Inc.*, 2002 WI App 207, ¶ 13, 257 Wis. 2d 421, 651 N.W.2d 345. Section 806.07(1) authorizes the court to relieve a party "from a judgment, order or stipulation." We can ascertain no valid justification for protecting a release from being opened while stipulations are subject to equitable relief. Both methods are commonly used to terminate litigation. Therefore, for the purposes of a motion under § 806.07(1), we consider a release and a stipulation to dismiss a claim one and the same. We need not consider the effect of the nearly $76,000 Western has paid the Mullins until they recover less than that amount from Western.

*By the Court.*—Order reversed.

¶ 15. DEININGER, P.J. (*dissenting*). I cannot join the majority's reasoning or result. I believe the majority pays only lip service to the standard for our review of the trial court's exercise of discretion and, instead, exercises its own in directing that the Sukalas' WIS. STAT. § 806.07 (2001–02)[1] motion be granted. In addition, the majority misapplies the supreme court's holdings in *Mullen v. Coolong*, 153 Wis. 2d 401, 451 N.W.2d 412 (1990) (*Mullen II*), and *Schwochert v. American Family Mutual Insurance Co.*, 172 Wis. 2d 628, 494 N.W.2d 201 (1993), and it overstates the impact of *Badger Mutual Insurance Co. v. Schmitz*, 2002 WI 98, 255 Wis. 2d 61, 647 N.W.2d 223, on our decision in *Sukala v. Heritage Mutual Insurance Co.*, 2000 WI App 266, 240 Wis. 2d 65, 622 N.W.2d 457 (*Sukala I*). Finally, the majority's disposition of this appeal seriously un-

---

[1] All references to the Wisconsin Statutes are to the 2001–02 version unless otherwise noted.

dermines the finality of judgments in Wisconsin courts because losing parties will now arguably have grounds to seek relief from final judgments whenever a subsequent appellate decision casts doubt on a prior outcome.

¶ 16. The majority relies heavily on *Mullen II* in support of the result it reaches. The supreme court explained in *Mullen II* that the standard for appellate review of a trial court's order granting or denying relief from a judgment under Wis. Stat. § 806.07 is as follows:

> An order granting a motion for relief under sec. 806.07, Stats., will not be reversed unless there has been a clear abuse of discretion. *Shuput v. Lauer*, 109 Wis. 2d 164, 177, 325 N.W.2d 321 (1982). The term "discretion" contemplates a process of reasoning which depends on facts that are in the record or reasonably derived by inference from the record and yields a conclusion based on logic and founded on proper legal standards. *Id*. at 177–78.

*Mullen II*, 153 Wis. 2d at 406. The majority does not tell us in what manner the trial court's discretionary decision to deny the Sukalas relief was deficient. That is, the majority identifies no error of law or fact in the trial court's ruling, and neither does it assert that the trial court failed to employ a logical reasoning process in reaching its decision.

¶ 17. The majority is not alone in this. I, too, cannot find fault with the trial court's reasoning. The court applied the proper legal standard. It stated that it had read *Mullen II* and concluded that it must determine "if there was an injustice done" to the Sukalas arising from the supreme court's denial of their petition for review and subsequent issuance of its decision in *Schmitz. See id*. at 407 (noting that relief under Wis. Stat. § 806.07(1)(h) is warranted " 'whenever such ac-

481

tion is appropriate to accomplish justice' " (citation omitted)). At another point in its oral ruling, the court referred to the need for there to be "unique and extraordinary" circumstances in order to justify granting relief under § 806.07(1)(h). This is also a correct statement of applicable law. *See Brown v. Mosser Lee Co.*, 164 Wis. 2d 612, 616, 618–19, 476 N.W.2d 294 (Ct. App. 1991). Finally, the trial court also expressed its awareness that it was required to balance any unfairness toward the Sukalas against the competing value of "finality . . . in the resolution of disputes." *Mullen II*, 153 Wis. 2d at 407; *Brown*, 164 Wis. 2d at 616.

¶ 18.  The trial court also considered the relevant facts in this case. The court took note of the fact that the Sukalas' litigation with the two UIM insurers had ended with the supreme court's denial of their petition for review some seven months *before* the court granted review in *Schmitz*. The trial court concluded, in my estimation, correctly, that this fact removed the present case from the type of "unique and extraordinary" circumstances that existed in *Mullen II*. The trial court further observed, also correctly, as I discuss further below, that unlike what had occurred in *Mullen II*, the supreme court in *Schmitz* neither expressly overruled *Sukala I* nor suggested that *Sukala I* had been incorrectly decided.

¶ 19.  Finally, the trial court, in synthesizing the applicable legal standard with the facts before it, employed a logical reasoning process to reach a readily affirmable conclusion, which the court summarized as follows:

> I just can't imagine that if [the supreme court] actually felt that that decision [*Sukala I*] was erroneous when they were doing [*Schmitz*], that they wouldn't have

done more than say that one sentence of the language used in *Sukala* was incorrect; and it's that absence of their reference to this as something extraordinary in error that tells me they didn't believe that it was; and without them making a finding that specifically over-ruled that case or specifically stated the decision in this case was in error in light of the subsequent decision, it becomes very difficult for me to say that the judgment ought to be reopened and find some extraordinary circumstance, other than the fact that there's a new precedent . . . .

¶ 20.   In place of any legitimate criticism of the trial court's exercise of discretion, the majority simply substitutes its own assessment of the present facts, finding them "close enough to the scenario in *Mullen II*" to justify granting the Sukalas relief from the final judgment. Majority at ¶ 12. The majority virtually acknowledges that it has independently weighed the competing values at stake in this case when it explains that the "crux of *our inquiry* is whether fairness mandates opening the judgment." *Id.* (emphasis added). But, of course, that is not what appellate judges are supposed to do when reviewing a trial court's discretionary ruling:

Motions under § 806.07 STATS., are reviewed for erroneous exercise of discretion. *Nelson v. Taff*, 175 Wis. 2d 178, 187, 499 N.W.2d 685, 689 (Ct. App. 1993). Therefore, we are not deciding whether we would have granted Kovalic's motion, but whether the trial court's decision was within the wide band of decisions that a reasonable trial court could have made.

The limited scope of our review of discretionary rulings is well settled. Generally, "[w]e will not reverse a discretionary determination by the trial court if the record shows that discretion was in fact exercised and

483

we can perceive a reasonable basis for the court's decision." *Prahl v. Brosamle*, 142 Wis. 2d 658, 667, 420 N.W.2d 372, 376 (Ct. App. 1987). Indeed, "[b]ecause the exercise of discretion is so essential to the trial court's functioning, we generally look for reasons to sustain discretionary determinations." *Schneller v. St. Mary's Hosp.*, 155 Wis. 2d 365, 374, 455 N.W.2d 250, 254 (Ct. App. 1990), *aff'd*, 162 Wis. 2d 296, 470 N.W.2d 873 (1991).

*Kovalic v. DEC Int'l*, 186 Wis. 2d 162, 166, 519 N.W.2d 351 (Ct. App. 1994).[2]

¶ 21.   In addition to failing to employ the proper standard of review, the majority misstates the facts of *Mullen II* and misapplies its holding. The majority asserts that in *Mullen II*, "the supreme court denied Mullen's petition for review and then 'accepted certification of [*Nicholson*].' " Majority at ¶ 9. That sequence of events would concededly bring the *Mullen II* facts closer to those in this case, but that is not what happened in *Mullen II*. Rather, as the supreme court explained, it had "already accepted certification of a case [*Nicholson*] which posed the identical question of law raised by Mullen in her petition for review" some nine months *before* denying Mullen's petition. *Mullen II*, 153 Wis. 2d at 404. It is that sequence of events that

[2] In *Kovalic v. DEC International*, 186 Wis. 2d 162, 519 N.W.2d 351 (Ct. App. 1994), we affirmed the trial court's denial of a motion for relief from judgment. We explained that "[d]espite Kovalic's assertions of extraordinary circumstances, we conclude that Kovalic's motion was nothing more than an attempt to relitigate his previous appeal. Despite his arguments to the contrary, Kovalic has shown *at best* that the law has changed, and that he now wants to take advantage of those changes." *Id.* at 167. Under the standard of review we espoused in *Kovalic*, and for much the same reason we cited there, I would affirm the denial of the Sukalas' motion.

the supreme court in *Mullen II* deemed the "determinative fact in this case," i.e., "we denied a petition for review in *Mullen I* at the very same time when the same issue was before us in *Nicholson.*" *Id.* at 408.

¶ 22. The majority cites *Schwochert* for the proposition that the supreme court's denial of review of an issue, when the identical issue is pending before it in another case, is not a prerequisite for relief under WIS. STAT. § 806.07(1)(h). Majority at ¶¶ 10, 12 (citing *Schwochert*, 172 Wis. 2d at 634). I agree that other "unique and extraordinary" facts may permit a trial court to properly grant relief under § 806.07(1)(h), but further development of the law after a given case is concluded is, if anything, a frequent and routine occurrence. *See Brown*, 164 Wis. 2d at 623 (noting that it is "neither unique nor extraordinary" for a case to be decided "based on precedent that is later overruled," which "has never been considered grounds for reopening preexisting judgments").

¶ 23. Moreover, the trial court in this case, unlike the trial court in *Schwochert*, did not labor under the misimpression that only facts identical to those in *Mullen II* could be the basis for relief. *See Schwochert*, 172 Wis. 2d at 633. Rather, the trial court here concluded that, because the Sukalas' litigation had ended several months before the supreme court even chose to grant review in *Schmitz*, and because *Schmitz* merely criticized certain language in *Sukala I* but neither overruled it nor disputed the correctness of its outcome, the present facts were simply too far removed from those in *Mullen II* to be deemed a unique and extraordinary circumstance that would outweigh the value in the finality of the present judgment.

485

¶ 24. Although it relies on the unremarkable explanation in *Schwochert* that relief under Wis. Stat. § 806.07(1)(h) is not conditioned on presenting facts identical to those in *Mullen II*, the majority neglects to relate that the supreme court in *Schwochert* actually upheld the trial court's denial of relief, notwithstanding the trial court's misconception of the applicable law. The court explained that although it had subsequently withdrawn "dictum" contained in its earlier *Schwochert* decision, it had not overruled the earlier decision, a contention it concluded was "an essential component" of the Schwocherts' claim for relief. *Schwochert,* 172 Wis. 2d at 634.[3] As the trial court here correctly concluded, the Sukalas' claim suffers from a similar infirmity.

---

[3] The supreme court set out the standard for its review in the second paragraph of *Schwochert v. American Family Mutual Insurance Co.,* 172 Wis. 2d 628, 494 N.W.2d 201 (1993): " 'On appeal from an order denying a motion for relief from a judgment, the circuit court's decision will not be reversed unless there has been a clear abuse of discretion.' " *Id.* at 630 (citation omitted). In each of the precedents under discussion, the end result of appellate action was the affirmance of the trial court's exercise of discretion in granting or denying relief under Wis. Stat. § 806.07(1): *Schwochert,* 172 Wis. 2d 628, 636–37 (affirming trial court's denial of relief); *Mullen v. Coolong,* 153 Wis. 2d 401, 411, 451 N.W.2d 412 (1990) (*Mullen II*) (reversing our reversal of, and thus affirming, the trial court's granting of relief); *Kovalic,* 186 Wis. 2d 162, 171 (affirming trial court's denial of relief); *Brown v. Mosser Lee Co.,* 164 Wis. 2d 612, 623, 476 N.W.2d 294 (Ct. App. 1991) (same). This does not mean, of course, that trial courts may do anything they please when acting on motions for relief under § 806.07, regardless of the law or facts, but it does show that reversals of discretionary decisions are more the exception than the rule, owing in large measure to a very deferential standard of appellate review. *See State v. McConnohie,* 113 Wis. 2d 362, 370, 334 N.W.2d 903 (1983) (" '[T]o be invested with discretion means that the trial

¶ 25. The majority maintains that the supreme court "implicitly" overruled *Sukala I* in *Schmitz*, citing in support our opinion in *Dowhower v. Marquez*, 2004 WI App 3, ¶ 20, 268 Wis. 2d 823, 674 N.W.2d 906. Majority at ¶ 12. The citation to *Dowhower* is somewhat disingenuous, however, in that we neither expressly concluded in *Dowhower* that *Sukala I* had been overruled, nor did we provide any basis for so concluding. In fact, we relied on *Sukala I* in *Dowhower* for the proposition that "[a] declarations page is intended to provide a summary of coverage and cannot provide a complete picture of coverage under a policy," while noting in our citation to *Sukala I,* in an appositive providing subsequent case history, "*overruled on other grounds by Schmitz.*" *Dowhower,* 268 Wis. 2d 823, ¶ 20. With all due respect to the current majority and that in *Dowhower,* I do not feel bound by the cited appositive and find the trial court's analysis of what the supreme court did in *Schmitz* with respect to *Sukala I* much closer to the mark.

¶ 26. To be sure, in the passage from *Schmitz* quoted by the majority at ¶ 5, the supreme court criticized a sentence in our opinion in *Sukala I* as being "ambiguous and misleading." *Schmitz,* 255 Wis. 2d 61, ¶ 42. It did so, however, only after "[i]n essence" agreeing with our earlier analysis in *Sukala I. Id.* Nowhere in *Schmitz* did the supreme court suggest that, beyond our unfortunate "shift[] [in] terms" in the last sentence of paragraph 20 in *Sukala I,* we had improperly analyzed

judge has what might be termed a limited right to be wrong in the view of the appellate court, without incurring reversal.' " (citation omitted)).

the policies at issue or reached an erroneous result.[4] Quite simply, the supreme court has *not* overruled *Sukala I*, either in *Schmitz* or since, and we have no power to do so. " 'Only the supreme court, the highest court in the state, has the power to overrule, modify or withdraw language from a published opinion of the court of appeals.' " *Sukala I*, 240 Wis. 2d 65, ¶ 20 (citing *Cook v. Cook*, 208 Wis. 2d 166, 189–90, 560 N.W.2d 246 (1997)).

¶ 27.   The contrast between the supreme court's subsequent action on "the identical issue" litigated in *Mullen I*, and what the supreme court said in *Schmitz* about *Sukala I*, was a major consideration in the trial court's decision to deny the Sukalas' motion for relief. The result in *Mullen I* would clearly have been different had the supreme court granted review and decided that case together with *Nicholson*. *See Mullen II*, 153 Wis. 2d at 408 ("[W]e reached [in *Nicholson*] the precise result Mullen advocated in her petition for review in *Mullen I*."). The same cannot be said in this case:   Had the supreme court granted review of *Sukala I*, and decided it together with or after *Schmitz*, the result might have changed, but it also might not have (see footnote 4). Thus, the present facts are for a second reason very

---

[4] The supreme court's criticism of the language in paragraph 20 of *Sukala I* was that it incorrectly suggested that if a reducing clause itself is unambiguous, no inquiry is required regarding whether ambiguity is created by the "entire policy," taken as a whole. *Schmitz*, 255 Wis. 2d 61, ¶ 42. In *Sukala I*, however, we examined various features of the policies at issue before concluding that both were unambiguous with respect to the reduction of UIM coverage limits for certain payments from other sources. *See Sukala v. Heritage Mut. Ins. Co.*, 2000 WI App 266, ¶¶ 9–14, 240 Wis. 2d 65, 622 N.W.2d 457 (*Sukala I*). This perhaps explains why the supreme court in *Schmitz* criticized the imprecise language in one sentence of our opinion rather than rejecting our overall analysis or result.

488

different from the circumstances present in *Mullen II*, and they are much closer to those in *Schwochert*, 172 Wis. 2d at 636–37 (affirming denial of motion for relief where prior appellate decision had not been overruled) and *Kovalic*, 186 Wis. 2d at 164–67 (same, rejecting notion "that if the law changes, all cases decided under the prior law may be relitigated" because "such a rule would destroy the finality of many judgments").

¶ 28.   I do not doubt that the supreme court's call in *Schmitz* for "crystal clarity" in insurance policies containing UIM reducing clauses would have strengthened the Sukalas' arguments for invalidating the reducing clauses in these two policies on ambiguity grounds. *See Schmitz*, 255 Wis. 2d 61, ¶ 46. But this fact alone not only fails to justify reopening the final judgment in this case, it also demonstrates the slipperiness of the slope on which the majority's disposition places us. Suppose, for example, that the Sukalas had obtained the relief the majority grants them because of *Schmitz*, and that they then prevailed in obtaining a judgment in their favor because the reducing clauses at issue here failed the *Schmitz* "crystal clear" test. Suppose further that the supreme court denied the present insurers' petitions for review before it accepted review of our decision in *Folkman v. Quamme*, 2002 WI App 237, 257 Wis. 2d 864, 652 N.W.2d 406, (*Folkman I*), rev'd, 2003 WI 116, 264 Wis. 2d 617, 665 N.W.2d 857 (*Folkman II*). Under the majority's rationale, would a court not be obliged to grant the insurers relief from the final judgment adverse to them after the supreme court issued its decision in *Folkman II*, in which the court explained that its "crystal clear" language in *Schmitz* had had the unintended effect of "alter[ing] the analytical focus" of lower court decisions, clarifying that *Schmitz* did "not demand perfection in policy drafts-

manship"? *Folkman II*, 264 Wis. 2d 617, ¶¶ 30–31. In other words, will this case ever end, regardless of the number of final judgments that are entered or opportunities for appellate review that are exhausted, so long as the law regarding UIM clauses continues to evolve?

¶ 29. The foregoing hypothetical is not as far-fetched as it might first appear. We recently concluded in *Gohde v. MSI Insurance Co.*, 2004 WI App 69, ¶¶ 1, 4–7, 272 Wis. 2d 313, 679 N.W.2d 835, that a policy containing a UIM reducing clause was not ambiguous based on *Folkman II*, having previously concluded it was ambiguous under *Schmitz*, after still earlier concluding it was valid under *Sukala I*. In *Gohde*, however, unlike here, our two earlier conclusions never terminated the litigation because the supreme court twice granted review and remanded to us for further consideration in light of first *Schmitz* and then *Folkman II*. *Id.* Under the majority's disposition, the Sukalas and their UIM insurers will now also have the policies at issue examined under *Schmitz* and *Folkman II*, notwithstanding the fact that the circuit court judgment in this case was entered on April 14, 1999, and became final on April 5, 2001, when the supreme court denied the Sukalas' petition for review.

¶ 30. This litigation was thus concluded more than three months before this court decided *Schmitz* in July 2001, and almost seven months before the supreme court agreed to review our *Schmitz* decision on October 23, 2001. It is now 2004, and unless the supreme court accepts review and reverses the majority's disposition, the parties will go back to the circuit court to argue whether that court's 1999 judgment in favor of the insurers was correct in light of a series of appellate decisions issued years after appellate review of the 1999 judgment had concluded. Not only

will the parties be required to argue, and the circuit court to consider, the effect of the 2002 *Schmitz* decision and its 2003 clarification in *Folkman II*, but also the possible effect of several published appellate decisions that have followed (and more that may yet follow). *See, e.g., Gohde*, 2004 WI App 69, 272 Wis. 2d 313, 679 N.W.2d 835; *Van Erden v. Sobczak*, 2004 WI App 40, ¶¶ 21–32, 271 Wis. 2d 163, 677 N.W.2d 718 (*Van Erden II*) (concluding that a policy with a reducing clause was not ambiguous under *Folkman II*, having previously reached the same result under *Schmitz*); *Dowhower*, 268 Wis. 2d 823, ¶¶ 1–3, 19–29 (concluding that a policy was ambiguous regarding UIM coverage reductions under *Folkman II*, just as the court had earlier concluded under *Schmitz*).

¶ 31.    As the varying outcomes in *Gohde, Van Erden II* and *Dowhower* demonstrate, it is far from certain that a different result will be reached in this case now that the present judgment has been set aside because of the supreme court's comments in *Schmitz* regarding *Sukala I*. As I have explained, that makes this a very different case than *Mullen II*, even if one could conclude, as the majority does, that the supreme court's denial of a petition for review seven months before accepting a similar case is "close enough" to the simultaneous denial of review while an identical issue is pending to entitle the Sukalas to the same relief as granted to Shirley Mullen.

¶ 32.    Regardless of whether this decision is published, as the majority recommends, the result the majority reaches will not go unnoticed by those involved on both sides of the much-litigated issue of reducing clause ambiguity. It will not be surprising, therefore, if numerous motions to reopen are filed, seeking to obtain for a disappointed litigant the per-

ceived benefit of newly decided case law. Thus, I believe that many judgments in Wisconsin that were once thought to be final will be much less so after today. For this reason, and because I cannot conclude that the trial court erred in determining that "unique and extraordinary" circumstances are not present that outweigh the value in the finality of judgments, I respectfully dissent.