Ronald W. Morters, Plaintiff-Appellant,
v.
Charles H. Barr and Tig Insurance Company, Defendant-Respondent.
Shannon L. Morters, Plaintiff,
v.
Charles H. Barr and Tig Insurance Company, Defendant.
No. 04-0741.
Court of Appeals of Wisconsin.
Opinion Filed: December 21, 2004.
Before Wedemeyer, P.J., Curley and Vergeront, JJ.
¶ 1 PER CURIAM.
Ronald W. Morters, pro se, appeals from a trial court order denying his motion to reopen a judgment assessing frivolous costs against him in his legal malpractice suit against his former attorney, Charles H. Barr, and assessing additional attorney's fees to Barr and his insurance company for appearing for and responding to the motion. Morters contends that the judgment assessing frivolous costs against him should be "reopened, set aside, and nullified" in the interests of justice, pursuant to WIS. STAT. § 806.07(1)(h) (2001-02).[1] Because the trial court did not erroneously exercise its discretion in denying Morters request for relief, we affirm.

I. BACKGROUND.
¶ 2 The facts of this case have been summarized by this court before.[2] Ronald Morters was involved in a multi-car accident when a driver crossed the center line during a snowstorm and hit his automobile. His wife, Ann, who was following him in a separate automobile, was unable to stop and struck him from behind. Shannon Morters, their granddaughter, was a passenger in Ann's car. All three of the Morters were injured, with Ronald having the most serious injuries.
¶ 3 The Morters and their granddaughter hired Barr as their attorney to commence lawsuits as a result of the accident. Barr filed suits on behalf of the three Morters against the driver who had caused the accident, but before a trial could be held, the parties mediated the case. At the mediation session, the other driver's insurance company offered $575,000 to settle all three cases. In addition, at mediation, the subrogated health insurance carrier agreed to reduce its claim and Barr agreed to reduce his fee so that the offer was equivalent to a $771,000 jury verdict.
¶ 4 The Morters rejected the offer, dismissed Barr as their attorney, and hired another law firm. The new law firm stipulated to the cases being decided by arbitration. Unhappy with the decision to arbitrate, the Morters fired the new law firm and hired a third attorney to represent them. At the Morters' direction, this new attorney filed a motion to relieve the Morters from the stipulation sending their cases into arbitration, but later they changed their minds and chose to proceed with the arbitration, resulting in the dismissal of their cases. The arbitrator determined that the Morters were entitled to only $557,384.17.
¶ 5 Morters and his granddaughter then commenced legal malpractice suits against Barr, claiming that: (1) Barr's actions deprived them of a jury trial; (2) he had a conflict of interest in representing all three parties; and (3) he negligently handled the lawsuits in regard to those claims filed with the insurance company.[3] Morters also subsequently amended his complaint to include Barr's insurer, TIG Insurance Company, as a defendant. While these actions were pending, the trial court consolidated the two Morters' lawsuits. Finding that the Morters had failed to establish any evidence that their conflict-of-interest or jurytrial claims resulted in any discernable monetary damages, the trial court dismissed those claims on partial summary judgment. With respect to the claims concerning the tortfeasor's insurance company, because the Morters failed to establish a coherent theory of damages or any compensable injury resulting from Barr's handling of the matter, the trial court dismissed this final claim at the close of the plaintiffs' case.
¶ 6 The Morters then appealed both the order granting partial summary judgment and the later judgment entered in the defendants' favor. The Morters complained that the trial court: (1) erroneously exercised its discretion in consolidating their two cases; (2) erred in granting partial summary judgment; (3) erroneously exercised its discretion in granting a motion in limine; and (4) erred in directing a verdict for the respondents. We affirmed the trial court in all respects. Morters v. Barr, No. 01-2011, unpublished slip op. (WI App Apr. 30, 2002).
¶ 7 In the trial court, Barr and TIG also moved for costs and attorney's fees on the grounds that the Morters' claims against Barr were frivolous under WIS. STAT. § 814.025(3)(b). The trial court ultimately concluded that each of the Morters' claims was frivolous and ordered Ronald Morters and their attorney, Robert E. Sutton, to pay the defendants $20,000, Morters being responsible for $10,000. Morters appealed that order, and we affirmed, concluding that Morters' claims were frivolous and the amount of the judgment was reasonable. Morters v. Barr, No. 02-2434, unpublished slip op. ¶¶ 11, 15 (WI App Mar. 25, 2003). Morters petitioned both the Wisconsin and United States Supreme Court for review, and the petitions were denied by both.
¶ 8 In December 2003, Morters filed a motion, pursuant to WIS. STAT. § 806.07(1)(h), to set aside and nullify the $10,000 judgment against him. In January 2004, the trial court denied the motion and awarded additional attorney's fees to Barr and TIG. Morters now appeals.

II. ANALYSIS.
¶ 9 Morters contends that the trial court failed to exercise its discretion in denying his motion to reopen the judgment, and that the interests of justice require that the $10,000 judgment against him be reopened, set aside, and nullified, because he now realizes that he was improperly advised to pursue litigation against Barr, and the responsibility for the frivolous action should thus lie solely with Sutton. He contends that "it is the attorney's responsibility, not the client's, to know the legal elements of a negligence claim," and "to analyze whether the facts of a situation can meet those requisite elements." He insists that Sutton "simply failed to consider the absence of causation in this case[,]" and Morters "was ill-advised to pursue this claim." He argues that Sutton failed to develop sufficient evidence and failed to emphasize the favorable evidence at trial. Morters also contends that an application of equitable factors dictates that Sutton should bear the ultimate responsibility for proceeding with the lawsuit. And finally, Morters points to a petition filed with the supreme court, which proposes a rule change in Wisconsin that would require parties to give their opponents notice and a reasonable opportunity to respond if they intend to seek sanctions, to support his contention that it would be in the interests of justice to vacate the judgment against him. We are unpersuaded.
¶ 10 WISCONSIN STAT. §806.07 "authorizes the court to relieve a party from a judgment, order, or stipulation in certain circumstances. [Specifically, §] 806.07(1)(h) is a catch-all provision that permits relief for `any reasons justifying relief from the operation of the judgment.'" Sukala v. Heritage Mut. Ins. Co., 2004 WI App 128, ¶ 8, ___ Wis. 2d ___, 685 N.W.2d 809. This section "`invokes the pure equity power of the court.'" Id. (citation omitted). The test for relief under WIS. STAT . § 806.07(1)(h) is "whether there are `extraordinary circumstances' to justify such relief." Shirk v. Bowling, Inc., 2001 WI 36, ¶ 14, 242 Wis. 2d 153, 624 N.W.2d 375 (citation omitted). "Extraordinary circumstances are those in which `the sanctity of the final judgment is outweighed by the "incessant command of the court's conscience that justice be done in light of all the facts."'" State v. Sprosty, 2001 WI App 231, ¶ 17, 248 Wis. 2d 480, 636 N.W.2d 213 (citations omitted). Indeed:
The court should not interpret extraordinary circumstances so broadly as to erode the concept of finality, nor should it interpret extraordinary circumstances so narrowly that subsection (h) does not provide a means for relief for truly deserving claimants. A final judgment should not be hastily disturbed, but subsection (h) should be construed to do substantial justice.
State ex rel M.L.B. v. D.G.H., 122 Wis. 2d 536, 552, 363 N.W.2d 419 (1985).
¶ 11 "Whether to grant relief from a judgment under WIS. STAT. § 806.07(1)(h) lies within the discretion of the trial court." Sukala, 2004 WI App 128, ¶ 7. In its exercise of discretion, "the [trial] court should consider factors relevant to the competing interests of finality of judgments and relief from unjust judgments[.]" M.L.B., 122 Wis. 2d at 552; see also Sprosty, 248 Wis. 2d 480, ¶ 20. Accordingly, we will reverse the trial court only if it erroneously exercised its discretion in denying the requested relief. See id.
¶ 12 In denying Morters' motion to set aside the judgment against him, the trial court indicated that it originally found both Morters and Sutton responsible for bringing the frivolous action, because "based on the evidence it takes two to tango." The trial court noted that while Sutton's legal reasoning was faulty, both Sutton and Morters were responsible for maintaining the frivolous action. The trial court concluded that Morters "did deserve to be punished for what [he] did in this case and the expense that [he] cost to the insurance company for having to defend the man and to [sic] his professional reputation." Furthermore, that trial court stated, "You were wrong for bringing it then and you're wrong in being back here now."
¶ 13 Clearly, the trial court did not find any extraordinary circumstances warranting the relief Morters requested. Despite Morters' assertion that Sutton should bear all responsibility for the frivolous costs because Morters now realizes and admits that his action against Barr was frivolous, the trial court concluded, in no uncertain terms, that both Morters and Sutton were responsible for the maintenance of the suit. It viewed Morters' current plea for relief as an attempt to relitigate issues that had already been decided and were final. Implicit in the trial court's decision was its concern for the finality of the judgment and its conclusion that the fees were justly imposed. As Morters has failed to establish any extraordinary circumstances justifying relief, the trial court properly exercised its discretion in denying Morters request to vacate the judgment.
¶ 14 Moreover, in regard to Morters' claim that the fact that a petition has been filed requesting a rule change that would add a "safe harbor" provision to Wisconsin's rules regarding frivolous claims supports his contention that it would be in the interests of justice to vacate the judgment against him fails for a number of reasons. First, Morters has failed to provide us with any authority in support of the proposition that a petition for a rule change supplies the requisite extraordinary circumstances necessary for relief. Second, there has yet to be a change in the law, and we can hardly conclude that it would be in the interests of justice to vacate a judgment that was entered consistent with the law as it stands. For these reasons, we affirm.
By the Court.  Order affirmed.
NOTES
[1] All references to the Wisconsin Statutes are to the 2001-02 version unless otherwise noted.
[2] As such, the factual background is provided largely by Morters v. Barr, No. 02-2434, unpublished slip op. ¶¶ 2-7 (WI App Mar. 25, 2003) (citing Morters v. Barr, No. 01-2011, unpublished slip op. ¶¶ 1-7 (WI App Jan. 14, 2003); Morters v. Barr, No. 01-2011, unpublished slip op. ¶¶ 2-4 (WI App Apr. 30, 2002)).
[3] Ann Morters died prior to the filing of the malpractice suits.